U.S. Department of Homeland Security
U.S. Citizenship and Immigration Services
Boston Field Office District #1
15 New Sudbury Street, JFK Federal Building
Boston, MA 02203



**U.S. Citizenship and Immigration Services**

JAN 0 3 2019

Corene Okuo
43 Wilcock Street Apt. 2
Dorchester MA, 02124

A214723233
MSC1890282238

**Decision**

Dear Corene Okuo :

Thank you for submitting Form I-130, Petition for Alien Relative, to U.S. Citizenship and Immigration Services (USCIS) on behalf of Mark Okuo (the beneficiary). You sought to have the beneficiary classified as the spouse of a United States citizen under section 201(b) of the Immigration and Nationality Act (INA). After a thorough review of your petition, the testimony provided during your interview and the record of evidence, we must inform you that we are denying your petition for the following reason(s).

Generally, to demonstrate that an individual is eligible for approval as the beneficiary of a petition filed under INA 201(b), a petitioner must:

- Establish a bona fide relationship to certain alien relatives who wish to immigrate to the United States;

- Establish the appropriate legal status (i.e., U.S. citizenship or lawful permanent residence) to submit a petition on the beneficiary's behalf.

In visa petition proceedings, it is the petitioner's burden to establish eligibility for the requested immigration benefit sought under the INA. See *Matter of Brantigan*, 11 I&N Dec. 493, 495 (BIA 1966); Title 8, Code of Federal Regulations (8 CFR), section 103.2(b)(1).

When there is reason to doubt the validity of a marital relationship, the petitioner must present evidence to show that the marriage was not entered into for the purpose of evading immigration law. See *Matter of Phillis*, 15 I&N Dec. 385, 386 (BIA 1975). To demonstrate that the purpose of the marriage was not to evade immigration law, a petitioner may submit documentation showing, for instance, joint ownership of property, joint tenancy of a common residence, commingling of financial resources, birth certificates of children born to the union, and sworn or affirmed affidavits from third parties with personal knowledge of the marital relationship. See 8 CFR 204.2(a) (1) (iii) (B).

On November 24, 2017, you, (petitioner) filed a Form I-130 on behalf of the beneficiary. You seek to classify the beneficiary as the spouse of a United States citizen pursuant to INA 201(b). You married the beneficiary on May 4, 2017, in Boston, Massachusetts. The beneficiary concurrently filed a Form I-485 (Application to Register Permanent Residence or Adjust Status) with your petition. Both you and the beneficiary appeared for an interview with USCIS on November 5, 2018.

GOVERNMENT EXHIBIT 25

## Submissions

You did not make any evidentiary submissions at time of filing your Form I-130. The evidence in support of your petition brought to your November 5 interview and the probative value assigned to each piece is listed below.

You submitted a total of twenty eight photos. Seven were of your wedding day, four with the wedding appointment notice, two of the beneficiary with two of his friends, and the remaining fifteen of four different events. These photos are afforded some positive value in support of your petition.

You submitted one Comcast bill dated October 9, 2018, addressed to both you and the beneficiary. Although this bill is assigned some positive evidentiary weight, the lack of other bills limit the value of the submission. Given the claimed length of the marital relationship, further submissions going further back would have offered more positive weight.

The bulk of the submissions made were seven months of a joint checking account with Citizens Bank and one month of the beneficiary's private checking account with Eastern Bank.

The beneficiary's Eastern account shows a great deal of use in the month of July with a number of charges with a location stamp of Texas. While he testified that those charges were from using a money transfer app that did not reflect his physical location, you testified that he was physically present in Texas to make those transfers/purchases. Your testimony regarding the beneficiary's trip to Texas is addressed below. The Citizens account shows semi-regular usage in early 2018. However the statement for the month of July shows a single purchase at the Boston Medical center on July 26. These bank statements are given some positive probative value for the history provided. However your lack of knowledge about the beneficiary's location for many of the July withdrawals is detrimental to your petition.

You submitted a copy of your lease for 43 Wilcock Street and payment receipts for November and October for $2,000 and $4,000 respectively. The lease is signed by both you and the beneficiary. This is assigned moderate positive value, however as stated below, you were unable to testify as to the name of your landlord and the amount due every month. Therefore the positive value of the lease is mitigated by the derogatory information in your testimony.

You submitted an acknowledgment notice from the Boston Election Department stating you registered to vote dated December 6, 2017. Though this letter is addressed to your claimed marital address it offers minimal probative value in support of your petition.

## Testimonial Discrepancies

During your individual interviews, the Officer asked both of you basic questions regarding the background of your relationship as well as various facts that a married couple should be able to recall.

### Work:

When asked about your employment you testified that you are a freelance hair stylist and work in either your home or go to client's homes. You reported that you worked on Saturday, November 3 in your own home, and that the client was in your house for most of the day. You further stated that the beneficiary returned from a late shift at 11AM that morning and walked past you and the client.

The beneficiary's testimony regarding your employment differed significantly from yours. The

beneficiary testified that you work at a salon in Dorchester and do not ever work on weekends, he also stated that you did not work on November 3. It is unclear why the beneficiary would believe that you have your own salon when you stated that you have been working independently in this manner for over a year. These discrepancies cast doubt on the overall validity of your petition as the weekend in question was only several days before your interview.

In regards to the beneficiary's employment you stated that the beneficiary usually takes a Lyft or Uber to work, while he reported that he drives his own car. You also reported that the beneficiary had worked Saturday and Sunday two weeks before the interview and the beneficiary testified he had not worked for the two weekends before the interview.

Beneficiary's family in the US:

When asked if the beneficiary had any immediate family members in the United states you stated that he has a brother living in Texas but could not remember his name, or if he was older or younger than the beneficiary. The beneficiary stated that he has no immediate or extended family anywhere in the United States. It is unclear why you would believe the beneficiary to have a close relative, especially considering your testimony regarding the beneficiary's trip to visit this person.

Trips outside MA:

You testified that the beneficiary took a weeklong trip to Dallas, Texas in late July and early August of 2018 to visit his brother. As stated above, the beneficiary denied having a brother in the United States at all. He further testified that he has never been to Texas. Therefore, this discrepancy is afforded significant detrimental value to the validity of your claimed relationship.

Apartment:

When asked to describe your apartment and roommates your testimony differed from the beneficiary's on several points. You stated that rent is $700 a month and that you gave the money in cash to your landlord. The beneficiary stated that the rent recently increased from $1,800 to $2,000 and that he paid it by himself for the month of November without you being present. Further, you were not able to name your landlord, and considering that you reported paying him in person and the length of your claimed residence at 43 Wilcock Street, it is unclear why you would be unable to provide his name.

Beneficiary in Nigeria:

You testified that while he was still living in Nigeria the beneficiary spent time working in government and was also a professor. The beneficiary stated unequivocally he had never had any government positions and had never worked in education. He testified that his only employment in Nigeria was working in real estate. He was not able to testify in any meaningful way why you would believe that.

Holidays:

When asked about how you spent Christmas 2017 you stated your oldest son came to visit and the only non-family members present were your roommates at the time. You also stated that your apartment had a Christmas tree that year. When asked the same question the beneficiary testified that none of your family members came to visit and the only guest was his friend Henry. He also testified that the house had a Christmas tree.

When asked if you spent the Fourth of July together in 2018 you stated that you spent the holiday apart, due to the beneficiary's trip to Texas. Not only did this statement not match the dates you provided earlier in the interview pertaining the beneficiary's trip, the beneficiary testified that you spent the holiday together. Your discrepant testimony regarding the beneficiary's location in the summer of 2018 casts doubt on the validity of the claimed marital relationship.

Recent Events:

When asked if you had eaten together the night before your interview you stated that the beneficiary went out with his friend Henry and did not come until late. The beneficiary stated he did not go out that night and was home for dinner time.

Proposal:

The testimony regarding your proposal and engagement was completely different than the beneficiary's testimony.

You stated the proposal took place at an Applebee's in New Jersey with your friend Stephany and Stephany's boyfriend in December 2015. You further testified that you had known the beneficiary for a year before you got married, meeting in 2013, and got married on May 10, 2016.

The beneficiary testified that he met you in February 2016 and that he proposed to you in April 2017 at a Jamaican restaurant in Dorchester. He further testified that no one else was present during the proposal. When asked the date of his marriage to you the beneficiary stated it was May 4, 2017, which matches the date on the submitted marriage certificate.

Knowledge of approximately when and where the initial meeting took place and information about the proposal are questions it is reasonable to assume a married couple would know. Considering how the dates differed by several years, and that you could not accurately testify as to the date of your marriage to the beneficiary is afforded significant negative value against your petition.

## NOID Response

For the derogatory information listed above, you and your attorney responded to the NOID on December 17, 2018. USCIS has reviewed the submissions in their totality, along with the previously submitted materials and testimony from your November 5, 2018, interview. The probative value of your response is listed below. You submitted:

- A brief from your attorney;
- A personal affidavit;
- An affidavit from the beneficiary;
- Eight photographs of a trip to New Jersey;
- Thirteen pages of text messages;
- A rent check receipt for December 2018;
- Four account statements for a joint Citizens Bank savings account (May 2017, July 2017, August 2017, October-December 2017);
- Eleven account statements for a joint Citizens Bank checking account (May to September 2017, and January to July 2018.)

### Attorney Brief:

The brief provided by your attorney attempts to offer some context or the testimonial discrepancies between your responses and those of the beneficiary. The BIA has ruled that "statements or assertions by counsel are not evidence." *Matter of Obaigbena*, 19 I&N 3042 (1988). There was extensive derogatory information regarding the point of sale transactions listed in Texas. Your counsel stated that "...it should be noted that the statements reflect that there were wire transfer charges because there were wire transfer charges." This was not in question, and your attorney acknowledges that your testimony regarding the beneficiary's location was incorrect. However this does not explain away your sworn testimony that the beneficiary spent several weeks in Texas making purchases several times throughout your interview.

The attorney brief states that "Corene did not provide the correct answer, but that was more in an attempt to please the interviewer." USCIS finds this answer to be insufficient response to overcome any testimonial discrepancies, as you were put under oath and instructed to respond to all the questions to the best of your ability. Knowing your spouse's whereabouts for the month of July this year is not contingent on the line of questioning at an interview.

### Affidavits:

Simply going on record, or testifying, without supporting documents is not sufficient to meet the burden of proof in immigration proceedings. See *Matter of Soffici*, 22 I&N Dec. 158, 165 (Comm'r 1998) referring to *Matter of Treasure Craft of California*, 14 I&N Dec. 190 (Reg. Comm.1972). Affidavits may be given significant weight if they are "detailed, internally consistent, and plausible; they include explanations of how the affiants acquired knowledge of the facts set forth; and they are corroborated by historical evidence." *Matter of Patel*, 19 I&N Dec. 774, 786 (BIA 1988). Finally, a personal affidavit, by the petitioner or the beneficiary, absent other corroborating or verifiable documentary evidence, carries little probative value as such statements are self-serving in nature.

In part five of your affidavit you acknowledge that you incorrectly testified as to the date of both your marriage and when you initially met the beneficiary. You do not offer any explanation for why those dates were incorrect. A person can be reasonably expected to know approximately when they met and married their spouse. You further state in part twenty of your affidavit that you "have no idea as to why" you got the details of the proposal wrong. Not only was your testimony about the date of the proposal incorrect, your testimony included a completely different state than the beneficiary's response. In the context of an adjustment of status interview, it can be reasonably expected for a spouse to get the major details correct regarding an event like the marriage proposal. As your two answers were entirely dissimilar, and you do not offer any context or explanation for the differences, this holds significant detrimental value against the overall validity of your petition.

In part fifteen of your affidavit you state that you went to New Jersey for the Fourth of July this year and that the beneficiary stayed in Massachusetts. You assert that the testimony on that matter was not discrepant. As stated in the NOID, the beneficiary testified that you both spent the holiday together, and that you were both in Massachusetts. Therefore your affidavit does not match the information offered in the NOID, nor the testimony offered by the beneficiary during his interview.

In parts seventeen and twenty-three of your affidavit you state you do not know why you stated the beneficiary went to Texas. As mentioned earlier, it is very unclear why you would invent a multi-week trip to Texas, especially to visit a brother who the beneficiary clearly stated does not live in the United States. Further, the inability to offer clear testimony about the month of July is very detrimental to your

petition. Review of the NOID and the testimony at the interview shows that you invented a number of details regarding this trip, stating the beneficiary took a bus to Texas and that he was gone for at least a week, visiting a brother whom you believed to be married and have children. The motivations to invent such an account are unclear but detract from the overall credibility of your testimony.

In parts twenty-one and twenty-two of your affidavit, you attempt to explain the discrepancies around the beneficiary's knowledge of your employment. While it is plausible that then beneficiary did not recognize the person in your home that weekend before the interview as a client, he still testified at the interview that you have a set place to work. Given your stated length of operating your business in this manner, for the beneficiary to have little to no knowledge of how you work is, in light of the other discrepancies, detrimental to your application.

In part eight of the beneficiary's affidavit he attempts to explain that your discrepant answers around the dates of meeting, proposal, and marriage, were simply because you were flustered. For you to get all three of those dates significantly wrong is not overcome by the explanations offered in your affidavit or the beneficiary's affidavit.

In parts sixteen, seventeen, and eighteen of the beneficiary's affidavit he states that he has traveled with you to New Jersey in the past. However, he does not offer any examples of travel prior to the interview. He then states that he recently took a trip with you to New Jersey and mentions the submitted photographs form the trip. Any submitted evidence must give insight into the claimed relationship during the premarital courtship stage, the marital stage before the interview, and the marital stage after the interview. Merely submitting documentary evidence from the period of time after the interview, while considered, will not be deemed as persuasive, as the temptation exists to create the appearance of a relationship as the result of the interview.

Part twenty-three of the beneficiary's affidavit addresses the discrepancies related to Christmas 2017. Although you claim both you and the beneficiary testified you had a Christmas tree, and it is mentioned in the NOID, review of the officer notes have shown this to be a typo on behalf of USCIS. It appears that at the interview the beneficiary testified that there was no Christmas tree at the claimed marital address, and USCIS erred in stating you both testified there was a tree. This does not match your affidavit or the beneficiary's affidavit.

In part twenty-four of the beneficiary's affidavit he states he has no idea why your testimony regarding the proposal differed so significantly from his. This does not do anything to overcome the discrepancy. The circumstances around your meeting and proposal are not mentioned in any way in either your affidavit or the beneficiary's. Given the lack of any clarifying information from either affidavit, this derogatory information is still wholly unaddressed.

In parts twenty-five through twenty-seven of the beneficiary's affidavit he glosses over his lack of knowledge of your work stating that he simply was not paying attention the Saturday before the interview or in general. Based on your testimony that you regularly work from home, his statement that "…if you are a hairdresser, you work at a salon," shows limited knowledge of how you spend your time. During the interview the beneficiary testified that you have your own store in Dorchester where you work, clearly stating that it is a specific address. While USCIS is not expecting the beneficiary to be able to account for your whereabouts at any given time, related to your work, his attempt to explain away the discrepant testimony does not match his original statements.

In parts twenty-eight to thirty of his affidavit the beneficiary offers some explanations for the Texas trip and banking information. USCIS is not calling into question what the beneficiary does for work. Instead,

USCIS is again questioning why you would testify under oath that the beneficiary has a brother in Texas, and that he went there to visit him. Point of service transactions often have no bearing on the actual geographic location of the individual making the transaction. During the interview the officer asked for information regarding those transactions and you testified at length about them. Furthermore, in part twenty-nine the beneficiary states that you both kept in touch while you were in Jew Jersey with family around the approximate time you claimed he was in Texas. Review of the submitted text message logs do not show any texts from July of this year. Although those message logs will be addressed in greater detail below, logs form that time period would have verified the beneficiary's claim.

The submitted text logs are of mixed probative value. The last submitted page appears to be from a person named AhShanae, considering that the remainder of the texts are clearly from you to the beneficiary to his phone, it is unclear who is participating in the final submitted page. The majority of the submitted texts are from between December and February, one from May, one from August, and several with no month/day time stamps. As they are all from before the interview, they offer positive probative value, however that positive value is insufficient to overcome the other substantial derogatory information.

You submitted four Citizens Bank joint savings statements for the months mentioned above. This account shows minimal usage, with the period of October to December, 2017, showing a total lack of activity on the account.

You submitted eleven statements for the joint checking account in both your names. These accounts have occasional utility bills but do not appear to have any recurring charges. For example March 2018 has a bill for Comcast that does not appear in the other statements, while May 2018, is the only month with an Eversource bill. Some of the statements show grocery shopping, and others, such as September 2017, show no usage at all. August to September 2017 show over a dozen purchases that took place entirely in New Jersey but that does not match testimony about the trips, either independent or joint, to New Jersey. Despite the number of statements provided, these statements do not offer any insight as to how you and the beneficiary comingle finances or pay for utilities and rent.

## Conclusion

Based on a review of the record, USCIS finds that you have not met your burden of proof in demonstrating that your petition should be approved. Your response to the NOID did not overcome the derogatory information that arose during your joint interview or the weakness of many of the submitted documents. You did not address the discrepant testimony about the beneficiary's work as listed in the NOID, nor did you offer any explanation about the proposal, marriage, initial meeting, trip to Texas, trips to New Jersey, the day before the interview, the beneficiary's employment before coming to America, and other issues addressed in the NOID not found in your affidavits. USCIS has determined your marriage was entered into solely to avoid the immigration laws of the United States and was not valid at its inception. Therefore USCIS denies your Form I-130.

This decision will become final unless you appeal it by filing a completed Form EOIR-29, Notice of Appeal to the Board of Immigration Appeals from a Decision of a USCIS Officer. Although the appeal will be decided by the Board of Immigration Appeals (BIA), you must send the Form EOIR-29 and all required documents, including the appropriate filing fee, to the Boston Field Office at the following address:

>U.S. Citizenship and Immigration Services, Boston Field Office
>15 New Sudbury Street John F. Kennedy Federal Building,

Government Center, Room E-160
Boston, MA 02203

The Form EOIR-29 must be received within 30 days from the date of this decision notice. The decision is final if your appeal is not received within the time allowed. If you, the petitioner, intend to be represented on appeal, your attorney or accredited representative must submit Form EOIR-27 with Form EOIR-29.

If you or your attorney wishes to file a brief in support of your appeal, the brief must be received by the USCIS office where you file your appeal either with your appeal or no later than 30 days from the date of filing your appeal. Your appeal will be sent for further processing 30 days after the date USCIS receives it; after that time, no brief regarding your appeal can be accepted by the USCIS office.

For more information about filing requirements for appeals to the BIA, please see 8 CFR 1003.3 and the Board of Immigration Appeals Practice Manual available at www.usdoj.gov/eoir. If you need additional information, please visit the USCIS Web site at www.uscis.gov or call our USCIS Contact Center toll free at 1-800-375-5283.

Sincerely,

Michael J. McCleary
Field Office Director
Boston, Massachusetts

CC: Joan Altamore
39 Glendower Road
Roslindale, MA 02131

nad

# Attachment
## (Applicable Law/Regulations)

8 CFR 103.2

(b) Evidence and processing. (1) Demonstrating eligibility. An applicant or petitioner must establish that he or she is eligible for the requested benefit at the time of filing the benefit request and must continue to be eligible through adjudication. Each benefit request must be properly completed and filed with all initial evidence required by applicable regulations and other USCIS instructions. Any evidence submitted in connection with a benefit request is incorporated into and considered part of the request.

8 CFR 103.8

(b) Effect of service by mail. Whenever a person has the right or is required to do some act within a prescribed period after the service of a notice upon him and the notice is served by mail, 3 days shall be added to the prescribed period. Service by mail is complete upon mailing.

8 CFR 204.2

(a) Petition for a spouse —
(1) Eligibility. A United States citizen or alien admitted for lawful permanent residence may file a petition on behalf of a spouse . . .
(2) Evidence for petition for a spouse. In addition to evidence of United States citizenship or lawful permanent residence, the petitioner must also provide evidence of the claimed relationship. A petition submitted on behalf of a spouse must be accompanied by a recent ADIT-style photograph of the petitioner, a recent ADIT-style photograph of the beneficiary, a certificate of marriage issued by civil authorities, and proof of the legal termination of all previous marriages of both the petitioner and the beneficiary. However, non-ADIT-style photographs may be accepted by the district director when the petitioner or beneficiary reside(s) in a country where such photographs are unavailable or cost prohibitive. . . .
(d) Petition for a child or son or daughter —
(1) Eligibility. A United States citizen may file a petition on behalf of an unmarried child under twenty-one years of age for immediate relative classification under section 201(b) of the Act. A United States citizen may file a petition on behalf of an unmarried son or daughter over twenty-one years of age under section 203(a)(1) or for a married son or daughter for preference classification under section 203(a)(3) of the Act. An alien lawfully admitted for permanent residence may file a petition on behalf of a child or an unmarried son or daughter for preference classification under section 203(a)(2) of the Act.
(2) Evidence to support petition for child or son or daughter. In addition to evidence of United States citizenship or lawful permanent resident, the petitioner must also provide evidence of the claimed relationship.
(i) Primary evidence for a legitimate child or son or daughter. If a petition is submitted by the mother, the birth certificate of the child showing the mother's name must accompany the petition. If the mother's name on the birth certificate is different from her name on the petition, evidence of the name change must also be submitted. If a petition is submitted by the father, the birth certificate of the child, a marriage certificate of the parents, and proof of legal termination of the parents' prior marriages, if any, issued by civil authorities must accompany the petition. If the father's name has been legally changed, evidence of

the name change must also accompany the petition.

(ii) Primary evidence for a legitimated child or son or daughter. A child can be legitimated through the marriage of his or her natural parents, by the laws of the country or state of the child's residence or domicile, or by the laws of the country or state of the father's residence or domicile. If the legitimation is based on the natural parents' marriage, such marriage must have taken place while the child was under the age of eighteen. If the legitimation is based on the laws of the country or state of the child's residence or domicile, the law must have taken effect before the child's eighteenth birthday. If the legitimation is based on the laws of the country or state of the father's residence or domicile, the father must have resided— while the child was under eighteen years of age—in the country or state under whose laws the child has been legitimated. Primary evidence of the relationship should consist of the beneficiary's birth certificate and the parents' marriage certificate or other evidence of legitimation issued by civil authorities.

(iii) Primary evidence for an illegitimate child or son or daughter. If a petition is submitted by the mother, the child's birth certificate, issued by civil authorities and showing the mother's name, must accompany the petition. If the mother's name on the birth certificate is different from her name as reflected in the petition, evidence of the name change must also be submitted. If the petition is submitted by the purported father of a child or son or daughter born out of wedlock, the father must show that he is the natural father and that a bona fide parent-child relationship was established when the child or son or daughter was unmarried and under twenty-one years of age. Such a relationship will be deemed to exist or to have existed where the father demonstrates or has demonstrated an active concern for the child's support, instruction, and general welfare. Primary evidence to establish that the petitioner is the child's natural father is the beneficiary's birth certificate, issued by civil authorities and showing the father's name. If the father's name has been legally changed, evidence of the name change must accompany the petition. Evidence of a parent/child relationship should establish more than merely a biological relationship. Emotional and/or financial ties or a genuine concern and interest by the father for the child's support, instruction, and general welfare must be shown. There should be evidence that the father and child actually lived together or that the father held the child out as being his own, that he provided for some or all of the child's needs, or that in general the father's behavior evidenced a genuine concern for the child. The most persuasive evidence for establishing a bona fide parent/child relationship and financial responsibility by the father is documentary evidence which was contemporaneous with the events in question. Such evidence may include, but is not limited to: money order receipts or cancelled checks showing the father's financial support of the beneficiary; the father's income tax returns; the father's medical or insurance records which include the beneficiary as a dependent; school records for the beneficiary; correspondence between the parties; or notarized affidavits of friends, neighbors, school officials, or other associates knowledgeable about the relationship.

(iv) Primary evidence for a stepchild. If a petition is submitted by a stepparent on behalf of a stepchild or stepson or stepdaughter, the petition must be supported by the stepchild's or stepson's or stepdaughter's birth certificate, issued by civil authorities and showing the name of the beneficiary's parent to whom the petitioner is married, a marriage certificate issued by civil authorities which shows that the petitioner and the child's natural parent were married before the stepchild or stepson or stepdaughter reached the age of eighteen; and evidence of the termination of any prior marriages of the petitioner and the natural parent of the stepchild or stepson or stepdaughter.

(v) Secondary evidence. When it is established that primary evidence is not available, secondary evidence may be accepted. To determine the availability of primary documents, the Service will refer to the Department of State's Foreign Affairs Manual (FAM). When the FAM shows that primary documents are generally available in the country at issue but the petitioner claims that his or her document is unavailable, a letter from the appropriate registrar stating that the document is not available will be required before the Service will accept secondary evidence. Secondary evidence will be evaluated for its authenticity and credibility. Secondary evidence may take the form of historical evidence; such evidence must have been issued contemporaneously with the event which it documents any may include, but is not limited to, medical records, school records, and religious documents. Affidavits may also by accepted. When

affidavits are submitted, they must be sworn to by persons who were born at the time of and who have personal knowledge of the event to which they attest. Any affidavit must contain the affiant's full name and address, date and place of birth, relationship to the party, if any, and complete details concerning how the affiant acquired knowledge of the event.

(vi) Blood tests. The director may require that a specific Blood Group Antigen Test be conducted of the beneficiary and the beneficiary's father and mother. In general, blood tests will be required only after other forms of evidence have proven inconclusive. If the specific Blood Group Antigen Test is also found not to be conclusive and the director determines that additional evidence is needed, a Human Leucocyte Antigen (HLA) test may be requested. Tests will be conducted, at the expense of the petitioner or beneficiary, by the United States Public Health Service physician who is authorized overseas or by a qualified medical specialist designated by the district director. The results of the test should be reported on Form G-620. Refusal to submit to a Specific Blood Group Antigen or HLA test when requested may constitute a basis for denial of the petition, unless a legitimate religious objection has been established. When a legitimate religious objection is established, alternate forms of evidence may be considered based upon documentation already submitted.

(vii) Primary evidence for an adopted child or son or daughter. A petition may be submitted on behalf of an adopted child or son or daughter by a United States citizen or lawful permanent resident if the adoption took place before the beneficiary's sixteenth birthday, and if the child has been in the legal custody of the adopting parent or parents and has resided with the adopting parent or parents for at least two years. A copy of the adoption decree, issued by the civil authorities, must accompany the petition.

(A) Legal custody means the assumption of responsibility for a minor by an adult under the laws of the state and under the order or approval of a court of law or other appropriate government entity. This provision requires that a legal process involving the courts or other recognized government entity take place. If the adopting parent was granted legal custody by the court or recognized governmental entity prior to the adoption, that period may be counted toward fulfillment of the two-year legal custody requirement. However, if custody was not granted prior to the adoption, the adoption decree shall be deemed to mark the commencement of legal custody. An informal custodial or guardianship document, such as a sworn affidavit signed before a notary public, is insufficient for this purpose.

(B) Evidence must also be submitted to show that the beneficiary resided with the petitioner for at least two years. Generally, such documentation must establish that the petitioner and the beneficiary resided together in a familial relationship. Evidence of parental control may include, but is not limited to, evidence that the adoptive parent owns or maintains the property where the child resides and provides financial support and day-to-day supervision. The evidence must clearly indicate the physical living arrangements of the adopted child, the adoptive parent(s), and the natural parent(s) for the period of time during which the adoptive parent claims to have met the residence requirement. When the adopted child continued to reside in the same household as a natural parent(s) during the period in which the adoptive parent petitioner seeks to establish his or her compliance with this requirement, the petitioner has the burden of establishing that he or she exercised primary parental control during that period of residence.

(C) Legal custody and residence occurring prior to or after the adoption will satisfy both requirements. Legal custody, like residence, is accounted for in the aggregate. Therefore, a break in legal custody or residence will not affect the time already fulfilled. To meet the definition of child contained in sections 101(b)(1)(E) and 101(b)(2) of the Act, the child must have been under 16 years of age when the adoption is finalized.

(D) On or after the Convention effective date, as defined in 8 CFR part 204.301, a United States citizen who is habitually resident in the United States, as determined under 8 CFR 204.303, may not file a Form I-130 under this section on behalf of child who was habitually resident in a Convention country, as determined under 8 CFR 204.303, unless the adoption was completed before the Convention effective date. In the case of any adoption occurring on or after the Convention effective date, a Form I-130 may be filed and approved only if the United States citizen petitioner was not habitually resident in the United States at the time of the adoption.

(E) For purposes of paragraph (d)(2)(vii)(D) of this section, USCIS will deem a United States citizen, 8 CFR 204.303 notwithstanding, to have been habitually resident outside the United States, if the citizen satisfies the 2-year joint residence and custody requirements by residing with the child outside the United States.

(F) For purposes of paragraph (d)(2)(vii)(D) of this section, USCIS will not approve a Form I-130 under section 101(b)(1)(E) of the Act on behalf of an alien child who is present in the United States based on an adoption that is entered on or after the Convention effective date, but whose habitual residence immediately before the child's arrival in the United States was in a Convention country. However, the U.S. citizen seeking the child's adoption may file a Form I-800A and Form I-800 under 8 CFR part 204, subpart C.

(3) Decision on and disposition of petition. The approved petition will be forwarded to the Department of State's Processing Center. If the beneficiary is in the United States and is eligible for adjustment of status under section 245 of the Act, the approved petition will be retained by the Service. If the petition is denied, the petitioner will be notified of the reasons for the denial and of the right to appeal in accordance with the provisions of 8 CFR 3.3.

(4) Derivative beneficiaries. A spouse or child accompanying or following to join a principal alien as used in this section may be accorded the same preference and priority date as the principal alien without the necessity of a separate petition. However, a child of an alien who is approved for classification as an immediate relative is not eligible for derivative classification and must have a separate petition approved on his or her behalf.

(5) Name change. When the petitioner's name does not appear on the child's birth certificate, evidence of the name change (such as the petitioner's marriage certificate, legal document showing name change, or other similar evidence) must accompany the petition. If the beneficiary's name has been legally changed, evidence of the name change must also accompany the petition.